UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SOUTHERN BANK & TRUST COMPANY,

       Plaintiff,

v.                                No. 2:13cv216

LABURNUM HOTEL PARTNERS, LLC, et al.,

       Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned United States Magistrate Judge for recommended disposition are Plaintiff Southern Bank & Trust Company ("Southern")'s two motions for summary judgment. See 28 U.S.C. 636(b)(1)(B); Fed. R. Civ. P. 72(b). Southern contends that it is entitled to judgment against both the principal debtor defendant Laburnum Hotel Partners, LLC ("Laburnum") (ECF No. 68), and against the individual guarantor defendants (collectively "Guarantors") (ECF No. 70), on claims related to a defaulted promissory note and commercial guaranties. Guarantors and Laburnum (collectively "Defendants") argue that genuine disputes of material fact – principally concerning the trustee's sale of the collateral – preclude summary judgment. For the reasons outlined below, the undersigned RECOMMENDS that the

1

Court DENY Southern's motions and DIRECT an evidentiary hearing for fact finding.

## I. Undisputed Material Facts[1]

### A. The Loan Documents and Assignment to Southern

Laburnum executed a promissory note dated August 14, 2008, for Loan No. 6114571 in the original principal amount of $18,300,000 in favor of the Bank of the Commonwealth (the "Original Note"). The Original Note provided that:

> Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 31, 2010. In addition, borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 30, 2008, with all subsequent interests payments to be due on the same day of each month after that.

(ECF No. 71-3, at 1). Laburnum executed a renewal promissory note dated August 31, 2010 for Loan No. 6114571, which extended the due date, but was otherwise materially identical to the Original Note. See (ECF No. 71-4, at 1). On October 27, 2010, Laburnum executed another extension agreement – the Change in Terms Agreement (collectively with the Original and August 2010 Note, "the Note") – which provided that "Borrower will pay this loan in 35 regular payments of $113,765.30 each and one Irregular last payment estimated at $17,739,992.48. Borrower's

---

[1] Pursuant to Local Rule 56, these facts are established by the movant, Southern's list of material facts it contends are not in dispute and Defendants' statement of genuine issues, as well as exhibits in the record. See (ECF Nos. 69, 71, 72, 73).

first payment is due October 31, 2010, and all subsequent payments are due on the same day of each month after that." (ECF No. 71-5, at 1).

The Note was secured by a deed of trust, dated August 14, 2008 and encumbering both real and personal property owned by Laburnum.   Laburnum pledged the real property located at 4401 South Laburnum Avenue, Richmond, Virginia – the hotel operated by Laburnum.   See (ECF No. 73-3).   And, it granted "a Uniform Commercial Code security interest in the Personal Property and Rents."   Id. at 3.   The deed of trust defined Personal Property as:

> all equipment, fixtures, and other articles of personal property now or hereafter owned by [Laburnum], and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together will all proceeds . . . from any sale or other disposition of the Property.

Id. at 14.   The deed of trust also provided: "This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time."   Id. at 8.   Finally, the deed of trust provided that upon default, "[a]ny sale of the Personal Property may be made in conjunction with any sale of the Real Property."   Id. at 10.

3

Laburnum and Bank of the Commonwealth also executed a security agreement, dated the same day as the deed of trust, to secure the Note and future advances. The security agreement - drafted with typical commercial brevity - granted Bank of the Commonwealth a security interest in:

> All inventory, equipment, accounts, including but not limited to all healthcare insurance, receivables, chattel paper, instruments (including but not limited to all promissory notes), letter of credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and payment intangibles); all timber to be cut; all attachments, excessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of, and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and imbedded software relating to the foregoing property, and all equipment, inventory, and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; whether now existing or hereafter arising, whether now owned or hereafter acquired whether now or hereafter subject to any rights of the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

(ECF No. 73-1, at 1).

When the Original Note and the August 2010 Note were executed, twenty-five individuals executed personal guaranties as security for the Note. Eighteen of those guarantors remain defendants in this action. Each of their guaranties indemnify a

4

fixed "share of indebtedness" for each guarantor, comprising a portion of Laburnum's principal debt. In their executed agreements, Guarantors all agreed to "unconditionally guarantee[] the full and punctual payment and satisfaction of [their] Share of Indebtedness of Borrower to Lender, and the performance and discharge of Borrower's obligations under the [August 2010] Note . . . ." (ECF No. 71-7, at 1).[2] The guaranties define "share of indebtedness" as, among other things, "an amount not to exceed [a specified dollar figure] of the principal amount of the indebtedness that is outstanding from time to time and at any one or more times" including "all accrued unpaid interest on the indebtedness and collection costs, expenses, and attorney's fees whether or not there is a lawsuit . . . ." <u>Id.</u> The guarantors and their share of Laburnum's indebtedness are as follows:

Vinod B. Agrawal ("Agrawal") - $457,500. (ECF No. 71-7).

Ashok K. Arora ("Arora") - $915,000. (ECF No. 71-9).

Kiran Debnath ("Debnath") - $457,500. (ECF No. 71-11).

Sudhir Mehrotra[3] ("Mehrotra") - $457,500. (ECF No. 71-13).

_____

[2] The parties agree that, other than the respective shares of indebtedness, all of the guaranties have the same terms. <u>See</u> Guarantors' Br., Facts ¶ 84 (ECF No. 72, at 9); Southern's Br. ¶ 84 (ECF No. 71, at 13).

[3] Both executed guaranties, Southern's motion, and the Complaint spell this guarantor's last name "Mehrotra," (ECF Nos. 1, 70, 71-12, 71-13), while the parties briefs and Mr. Hill's declaration spell it

Gunadhar Panigrahi ("Panigrahi") - $457,500. (ECF No. 71-15).

Amit S. Patel ("A.S. Patel") - $457,500. (ECF No. 71-17).

Ashok M. Patel ("A.M. Patel") - $2,287,500. (ECF No. 71-19).

Chirag Patel ("C. Patel") - $457,500. (ECF No. 71-21).

Kiran B. Patel ("K. Patel") - $2,287,500. (ECF No. 71-23).

Paresh Patel ("P. Patel") - $915,000. (ECF No. 71-25).

Rachen Patel ("R. Patel") - $228,750. (ECF No. 71-27).

Sangita Patel ("S. Patel") - $915,000. (ECF No. 71-29).

Prakash Rajamani ("Rajamani") - $457,500. (ECF No. 71-31).

Dilip Sarkar ("Sarkar") - $457,500. (ECF No. 71-33).

Muhammed Ali Siddiky ("Siddiky") - $228,500. (ECF No. 71-35).

Jitendra Swarup ("Swarup") - $915,000. (ECF No. 71-37).

Purshottam Vachanni ("Vachanni") - $457,500. (ECF No. 71-39).

Saileela Venkatesan ("Venkatesan") - $457,500. (ECF No. 71-41).

In September 2011, the Bank of the Commonwealth was placed into receivership, with the Federal Deposit Insurance Corporation ("FDIC") as receiver. Thereafter, Southern purchased various assets of the Bank of the Commonwealth from the FDIC, as receiver, including the Note and the related loan documents, including all of the guaranties executed by all of

"Mehrota," (ECF Nos. 71, 71-2, 72). This appears to be mere confusion or a repeated typographical error, not a genuine dispute.

6

the Guarantors.   Southern is the present holder of the Note, the Guaranties, and all related loan documents.

### B. Laburnum's Default and Notice of Sale

The parties agree that prior to the disposition of the collateral securing the Note, the Note was in default.[4]   Laburnum made its last payment on the note in August 2012.   By letter dated October 25, 2012, Southern made demand for payment in full under the Note.   Southern accelerated the debt associated with the Note and demanded payment on the Note.   Laburnum has not made a voluntary payment to Southern after October 25, 2012.   By letter dated October 25, 2012, Southern made demand for payment in full under the Guaranties.   None of the eighteen Guarantors has made any payment on their guaranties.

On April 9, 2013, the trustee gave notice to Defendants of his public auction of the property secured by the deed of trust.   See (ECF No. 72-2).   The trustee's notice provided that he would "offer for sale at public auction . . . the property described in [the] Deed of Trust."   Notice of Trustee's Sale (ECF No. 72-2, at 3).   The deed of trust defined "Property" as "collectively the Real Property and the Personal Property."   Deed of Trust

---

[4] Southern argues that the Note remains in default, while Defendants maintain that after the sale of the collateral, the Note was no longer in default because the trustee's commercially unreasonable sale effectively eliminated any deficiency on the Note, by operation of law.

(ECF No. 73-3, at 14).   And, as quoted above, the deed of trust defined "Personal Property" as "all equipment, fixtures, and other articles of personal property now or hereafter owned by [Laburnum], and now or hereafter attached or affixed to the Real Property . . . ." Id.

### C. The Trustee's Sale

On May 10, 2013, the trustee held a public auction and sold collateral which secured the Note.   Southern was the high bidder and executed a memorandum of sale, agreeing to pay $10,950,000 to the trustee.   Memorandum of Sale (ECF No. 72-4, at 1).   The parties agree that the trustee's sale certainly disposed of the real property encumbered by the deed of trust.   The Memorandum of Sale recited that the trustee sold "the real estate with all improvements thereon described with particularity in the aforementioned Deed of Trust and further described in the Notice of Trustee's Sale . . . ." Id.

On May 17, 2013, Southern assigned to Oak, LLC, "any and all of [its] right, title and interest in and to the Memorandum of Sale." Assignment (ECF No. 72-5, at 1).   On July 2, 2013, Southern and Oak, LLC executed an amended assignment, and extended the closing date.   See Amended Assignment (ECF No. 72-6, at 1).   On July 10, 2013, Oak, LLC and the trustee closed the sale and executed a "Seller's Settlement Statement," which

listed "Property" as "Parcel 3, 3.207 acres, Henrico County, Virginia." (ECF No. 72-7, at 1).

On May 10, 14, 15, and 16, 2013, after the trustee's sale, but prior to its assignment to Oak, LLC, Southern withdrew moneys from accounts held by Laburnum in the amounts of $30,510.90, $14,836.40, $2,332.47, and $11,231.79, respectively, and applied the balance of the deposit accounts to the principal owed by Laburnum. See Decl. of James Hill ¶ 19, 24 (ECF No. 69-5, at 3-4); Transaction History (ECF No. 69-11, at 8); Va. Code. Ann. § 8.9A-607(a)(4),(5). Southern has also compromised its claims against other guarantors of the Note and accordingly, credited $589.572.37 to the principal owed by Laburnum. The parties agree that Laburnum is entitled to a credit against its indebtedness under the Note, based in part on the disposition of the collateral on May 10, 2013, Southern's withdrawals from deposit accounts, and the amounts collected from other guarantors in settlement of claims against them.

## II. Genuinely Disputed Material Facts

From the foregoing, Southern has established both its right to enforce the Note and the Guaranties, and Defendants' default. However, disputes of material fact related to the disposition of the collateral securing Laburnum's indebtedness preclude summary judgment. Principally, these disputes involve the trustee's sale on May 10, 2013, from which Southern eventually received

proceeds from the sale of the hotel and property defined by the deed of trust.  Whether any other property securing the Note was also sold that day, or otherwise disposed of by Southern, is unclear.  That is, the parties dispute whether the trustee sold or disposed of any collateral other than the collateral covered by the deed of trust.

Laburnum's position with respect to the public auction is that the trustee "offered and sold only the real property and improvements," as defined by the deed of trust.  Laburnum's Br. ¶ 7 (ECF No. 73, at 4).  In contrast, Guarantors' position appears to be that all of the personal property collateral "has been disposed of by Southern."  Guarantors' Br. ¶ 75 (ECF No. 72, at 8).  But, Guarantors simultaneously deny that the personal property "was properly sold as part of the foreclosure sale."  Id.  It is not clear how Southern would have "disposed of" collateral other than by the assignment of its memorandum of sale to Oak, LLC, which referenced only the deed of trust.  But in their briefs and exhibits, Guarantors have raised disputes of material fact suggesting that certain personal property was transferred to Oak, LLC, but without proper notice by the trustee.  Defendants' position on whether title of the personal property actually transferred to Southern and/or its assignee is unclear.  After all, the trustee's memorandum of sale did not purport to transfer personal property collateral not covered by

the deed of trust.  See (ECF No. 72-4).  Thus, if the trustee did not dispose of personal property not covered by the deed of trust – which he was free to do, see Va. Code. Ann. § 8.9A-604 – then, Laburnum would still have title to such personal property, and Southern would still have a security interest in it, though neither would be in possession.

Notably, it is not Defendants' burden to establish facts on summary judgment.  But, their position as to what the facts will be at trial is murky.  For example, in their brief in opposition, Guarantors stated: "Despite the fact that only the real property was sold at the foreclosure, Southern also conveyed to the successful purchaser all of Laburnum's tangible personal property."  Guarantors' Br. (ECF No. 72, at 2).

Southern's position appears to be that the trustee sold all the real and personal property that served as collateral under the both the deed of trust and the security agreement – because the personal property covered by the agreements is the same.  See Southern's Guarantor Br. ¶ 77 (ECF No. 71, at 12) ("On May 10, 2013, the real property and personal property that secured the Note were sold at a foreclosure sale . . . ."); Southern's Laburnum Br. ¶ 19 (ECF No. 69, at 5) (same); Southern's Answers to Interrs. (ECF No. 73-4, at 8-9) ("All personal Property was sold with the Real Property.").  Whatever the parties' factual positions, it is quite clear under Virginia law that if a

secured party disposes of both real property and personal property covered by the same agreement, the "provisions of [part 6 of UCC Art. 9] do not apply." Va. Code Ann. § 8.9A-604(a)(2).

Thus, the undersigned is unable to recommend granting summary judgment to either party on this record due to genuine disputes of material fact. Accordingly, for the reasons outlined in detail below, the undersigned RECOMMENDS holding an evidentiary hearing/bench trial[5] in order to resolve the following factual disputes:

> 1. Was any collateral not covered by the deed of trust disposed of by the trustee's sale?
>
> 2. If so, was the disposition of such collateral made in a commercially reasonable manner?
>
> 3. If not, what amount of proceeds would have been realized had the trustee disposed of the collateral in a commercially reasonable manner?

### III. Analysis

Southern seeks summary judgment against Laburnum on the Note and against Guarantors on their guaranties, for a deficiency amount that it contends remains due following the trustee's sale. The parties agree that if a deficiency remains on the Note, Defendants are liable for such deficiency. However, the issues of fact listed above must be resolved in order to determine what deficiency, if any, remains on the Note.

---

[5] No party has demanded a jury trial. See Rule 16(b) Order ¶ 8 (ECF No. 66, at 5).

Accordingly, and as outlined below, those facts are material to deciding whether Southern is entitled to judgment on its claims against the various defendants.

## A. Defendant Laburnum

Southern seeks $6,053,079.91, plus interest, from Laburnum for its outstanding principal on the loan, past interest, late charges, and attorney's fees, among other fees. Pl.'s Br. (ECF No. 69, at 10); Decl of James C. Hill ¶ 77 (ECF No. 71-2, at 8). In its brief, Southern characterizes its cause of action against Laburnum to enforce the Note as one for breach of contract. In addition to being a negotiable instrument, a promissory note is a contract. See Stimpson v. Bishop, 82 Va. 190, 200 (1886) (citing Coles v. Withers, 74 Va. 186 (1880))("A bond, promissory note, or simple contract, for the payment of money in any shape or form, is a personal contract . . . .").[6]  Therefore, "[u]nder

_____

[6] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013) (citations omitted). "Virginia has long adhered to the traditional conflicts principle that the 'nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties.'" Crosson v. Conlee, 745 F.2d 896, 902 (4th Cir. 1984) (quoting Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970)). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)). If the selected "state is reasonably related to the purpose of the agreement, [the court] will apply the parties' choice of substantive law." Hooper v. Musolino, 364 S.E.2d 207, 211 (Va. 1988). Here, the Note and the Guaranties expressly provide that

Virginia common law, breach of a promissory note is encompassed under a breach of contract claim." S. Bank & Trust Co. v. Pride Grp., LLC, No. 2:14CV255, 2015 WL 410726, at *5 (E.D. Va. Jan. 28, 2015) (quoting Premier Bank, Inc. v. Tech. Res., Inc., No. 1:13CV340, 2013 WL 6834380, at *5 (E.D. Va. Dec.23, 2013)); see also Ruggia v. Washington Mut., 719 F. Supp. 2d 642, 646 (E.D. Va. 2010) (quoting Va. Code Ann. § 8.3A-601) ("In Virginia, the obligation to pay an instrument can only be 'discharged as stated in [Title 8.3A] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract.'"); Va. Code Ann. § 8.01-27 ("A civil action may be maintained upon any note or writing by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent.").

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009) (quoting Filak v. George, 594 S.E.2d 610,

---

they will be governed by "federal law applicable to [Plaintiff] and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions . . . ." See Compl. Ex. 1 (ECF No. 2-2, at 1). And that, "[t]his Note has been accepted by [Plaintiff] in the Commonwealth of Virginia." Id. Accordingly, the Court should apply Virginia law.

614 (Va. 2004)). The parties agree that Laburnum was in default on the Note, in breach of contract, and thus, would be liable for the Note's deficiency following the trustee's sale of the hotel if the trustee's disposition of the collateral was commercially reasonable. However, Southern has not established an absence of genuine disputes of fact surrounding the trustee's sale. Laburnum has placed the commercial reasonableness of the trustee's sale in issue, and contends that it is not liable for any deficiency.

### B. Guarantor Defendants

Under Virginia law, a guaranty is "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." McDonald v. Nat'l Enterprises, Inc., 547 S.E.2d 204, 207 (Va. 2001) (quoting B.F. Goodrich Rubber Co., Inc. v. Fisch, 127 S.E. 187, 188 (Va. 1925)). Where, as here, an obligee seeks to recover on the guaranty, it must establish "the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." McDonald v. Nat'l Enterprises, Inc., 547 S.E.2d 204,

207 (Va. 2001) (citations omitted).  Accordingly, Guarantors'
liability is contingent on Laburnum's liability on the Note.

### C. Applicable Law and Material Facts

While Defendants are liable on the Note and Guaranties, the
summary judgment record is not sufficient to conclude that a
deficiency remains for which they may be held liable.
Defendants have placed into issue whether the trustee's
disposition of collateral was commercially reasonable.  More
fundamentally though, the parties have not established what
collateral was disposed of by the trustee.  Regardless of
Defendants' position on what was sold, Southern, the movant, has
failed to show that no rational trier of fact could come to a
conclusion other than the conclusion that all the real and
personal property collateral defined by the deed of trust, and
only that collateral, was sold at the trustee's sale.  Thus,
Defendants have created genuine disputes of material fact that
preclude entry of a deficiency judgment summarily.

### 1. Rule 56

Rule 56 of the Federal Rules of Civil Procedure requires
the Court to grant a motion for summary judgment if "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477
U.S. 317, 322-24 (1986).  "A material fact is one 'that might

affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Here, Southern has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson, 477 U.S. at 252. Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks omitted).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving

party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>see</u> <u>Anderson</u>, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

2. <u>Virginia Law Governing Southern's Recovery</u>

As outlined above, the parties executed both a deed of trust and an Article 9 security agreement. The security interests created by those two agreements appear to overlap in some respects, but remain distinct.

The deed of trust created a security interest in favor of Southern in the real property owned by Laburnum, and "all equipment, fixtures, and other articles of personal property now or hereafter owned by [Laburnum], and now or hereafter attached or affixed to the Real Property . . . ." Deed of Trust (ECF No. 73-3, at 14). The Security Agreement created a broader security interest in "[a]ll inventory, equipment, accounts, including but not limited to all healthcare insurance, receivables, chattel paper, instruments (including but not limited to all promissory notes), letter of credit rights, letters of credit, documents, deposit accounts, . . . and general intangibles," among other personal property. Security Agreement (ECF No. 73-1, at 1).

The deed of trust also provided that it "constitute[d] a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time." (ECF No. 73-3, at 8). Hence, the deed of trust, by its terms, covered both real and personal property - at a minimum, to the extent that personal property was "equipment, fixtures, and other articles of personal property now or hereafter owned by [Laburnum], and now or hereafter attached or affixed to the Real Property." (ECF No. 73-3, at 14).

"Equipment" and "fixtures" are defined terms in Article 9. "'Equipment' means goods other than inventory, farm products, or consumer goods." Va. Code Ann. § 8.9A-102(33). And, "'Fixtures' means goods that have become so related to particular real property that an interest in them arises under real property law." Id. § 8.9A-102(41). Contrary to Defendants' argument, the final clause of the deed of trust's personal property definition only modifies the catch-all "other articles of personal property." (ECF No. 73-3, at 14). That is, the deed of trust's description of personal property collateral is not limited to only property "attached or affixed to the Real Property." Id. Moreover, that the final category of personal property collateral may be too generic to create a security interest is immaterial to the creation of security

19

interests in Laburnum's separately described "equipment" and fixtures." See Va. Code Ann. § 8.9A-203(b)(3)(A). Accordingly, it appears that most of the tangible personal property pledged to secure the Note will be either equipment or fixtures, and therefore, properly sold under the deed of trust.

Virginia law provides that

If a security agreement covers both personal and real property, a secured party may proceed:

(1) under [UCC Art. 9, Part 6] as to the personal property without prejudicing any rights with respect to the real property; or

(2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of [UCC Art. 9, Part 6] do not apply.

Va. Code Ann. § 8.9A-604. The decision of which rights and remedies to pursue is made by the secured party. See id. ("secured party may proceed" (emphasis added)); In re Timothy Dean Rest. & Bar, 342 B.R. 1, 28 n.36 (Bankr. D.D.C. 2006) (citing Va. Code Ann. § 8.9A-604(a); 9C Hawkland UCC Series § 9-604:1) ("Where an agreement covers both real and personal property, the creditor may elect to enforce her rights with respect to secured personal property using the other provisions of the UCC and enforce her rights with respect to secured real property through recourse to state law, or she may elect to enforce both types of rights using state law. The one thing that

20

she cannot do is enforce her rights with respect to realty using the UCC."); see also 79 C.J.S. Secured Transactions § 182 ("A secured party thus is entitled to enforce its rights as to real property collateral and personal property collateral in separate proceedings.").

Section 8.9A-604 gave Southern, upon Laburnum's default, two primary options with respect to the collateral covered by the deed of trust: (1) dispose of the real property collateral and personal property collateral separately – under real property law and the UCC, respectively; or (2) dispose of both in the same proceeding, under the law governing real property. See Va. Code Ann. § 8.9A-604.[7] The record currently before the Court establishes that Southern and its trustee took the latter option to foreclose on the collateral. However, because the record does not establish the extent of the personal property actually disposed of in the trustee's sale, it is impossible to conclude whether the trustee disposed of personal property collateral not included in the deed of trust. Determining what collateral the trustee disposed of renders different aspects of Virginia law applicable, triggers different responsibilities for

---

[7] In addition, the secured party is always free to "reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." Va. Code Ann. § 8.9A-601(a)(1); see Charles E. Brauer Co. v. NationsBank of Virginia, N.A., 466 S.E.2d 382, 386 (Va. 1996).

the trustee, and makes available different remedies to Laburnum and by extension, the Guarantors.

When a security agreement covers both real and personal property collateral - as the deed of trust did - and the trustee sells them together, then that disposition need only have proceeded "in accordance with the rights with respect to the real property, in which case the other provisions [of UCC, Art. 9, part 6, i.e., the rebuttable presumption of no deficiency] do not apply." Va. Code. Ann. § 8.9A-604(a)(1). Thus, if the trustee disposed of solely collateral covered by the deed of trust, the trustee's sale, including notice, advertisements, and description of the property, must conform to the requirements of Virginia Code § 55-59, et seq.

> The advertisement of sale under any deed of trust, in addition to such other matters as may be required by such deed of trust or by the trustee, in his discretion, shall set forth a description of the property to be sold, which description need not be as extensive as that contained in the deed of trust, and shall identify the property by street address, if any, . . . . Where available, tax map identification may be used but is not required. The advertisement shall also include the time, place and terms of sale and shall give the name or names of the trustee or trustees.

Va. Code Ann. § 55-59.3; see also id. § 55-59.1 (governing required notice by trustee).

Nonetheless, the law only requires "substantial compliance" with § 55-59.3, "so long as the rights of the parties are not affected in any material way." Va. Hous. Dev. Auth. V. Fox Run

L.P., 497 S.E.2d 747, 754 (Va. 1998)(citing <u>Bailey v. Pioneer Fed. Sav. & Loan Ass'n</u>, 172 S.E.2d 730, 734 (Va. 1970)).  In the event that the trustee failed to substantially comply with § 55-59.3, the grantor (Laburnum) must show that it was materially prejudiced by the failure.  <u>See</u> <u>Wood v. MorEquity, Inc.</u>, 331 F. App'x 243, 244-45 (4th Cir. 2009) (unpublished) (citing <u>Fox Run</u>; <u>Riley v. Robey</u>, 122 F. Supp. 2d 684 (W.D. Va. 2000)).  And in such a case, it appears that the grantor's remedy is typically rescission of the trustee's sale, <u>see</u> <u>Bailey</u>, 172 S.E.2d at 734; <u>Wood</u>, 331 F. App'x at 244; <u>Squire v. Va. Hous. Dev. Auth.</u>, 758 S.E.2d 55, 61-62 (Va. 2014), or an award of actual damages, <u>see, e.g.</u>, <u>Sharpe v. Talley</u>, 212 S.E.2d 273, 278 (Va. 1975). However, "[f]ailure to comply with the requirements of notice contained in [Va. Code § 55-59.1 (notice to debtor)] shall not affect the validity of the sale."  Va. Code Ann. § 55-59.1(C). Southern argues that its election to sell real and personal property together triggered this statutory section, and that the terms of its notice "substantially complied" with § 55-59.3.

On the other hand, where a security agreement covers only personal property – as the security agreement did – part 6 of UCC Article 9 governs the disposition of that collateral.  § 8.9A-604(a).  Thus, if as Defendants contend, the UCC applied to the trustee's disposition of any of the personal property collateral – which would necessarily require two separate

dispositions of collateral, see Va. Code Ann. § 8.9A-604(a)(2) -
then every aspect of that separate disposition must have been
commercially reasonable. Id. § 8.9A-610(b); see also § 8.9A-627
(defining dispositions that are commercially reasonable).

Defendants contend that the trustee did dispose of personal
property collateral that was covered by the security agreement,
but not covered by the deed of trust. That is, he conveyed to
Oak, LLC - the eventual buyer - personal property that was not
equipment, fixtures, or other personal property attached or
affixed to the real property. See Deed of Trust (ECF No. 73-3,
at 14) (defining "personal property"). If Defendants are
correct, that disposition would be subject to § 8.9A-626, and
Southern must prove that the disposition was conducted in a
commercially reasonable manner, or the liability of Laburnum and
Guarantors "for a deficiency is limited to an amount by which
the sum of the secured obligation, expenses, and attorney's fees
exceeds . . . the amount of proceeds that would have been
realized" had it proceeded in a commercially reasonable manner.
Id. § 8.9A-626(3). And, there is a rebuttable presumption that
the "amount of proceeds that would have been realized" is equal
to the "sum of the secured obligations, expenses, and attorney's
fees." Id. § 8.9A-626(4).

At bottom, the lack of clarity concerning what collateral
the trustee actually disposed of precludes summary judgment.

24

Because different standards and remedies apply to dispositions of personal property collateral alone and dispositions of both personal and real property collateral together, issues of material fact remain. And, without establishing what standard and remedies governed the trustee's disposition of collateral, Southern has not established that it is entitled to judgment as a matter of law against Laburnum, based on the materials in the record. See Fed. R. Civ. P. 56(a). Moreover, without establishing liability against Laburnum, Southern cannot establish liability on the Guaranties.

In supplemental briefing ordered by the Court, Defendants argued they are entitled to summary judgment, pursuant to Rule 56(f), because the trustee's notice of sale and a transcript of the trustee's auction establish that Southern's disposition of the personal property was not commercially reasonable. But, "[t]he commercial reasonableness standard becomes relevant only when a secured lender 'disposes' of the collateral." Charles E. Brauer Co. v. NationsBank of Virginia, N.A., 466 S.E.2d 382, 386 (Va. 1996) (citing Diversified Foods, Inc. v. First Nat'l Bank of Boston, 605 A.2d 609, 614 (Me. 1992)). Thus, the necessary factual predicate for this issue is a finding that the trustee disposed of the personal property collateral not covered by the deed of trust, separately from the real property collateral. The only evidence to support such a separate disposition is the

fact that the security agreement and deed of trust define personal property differently and that Southern did not give a separate notice that it was selling the personal property collateral described in the security agreement.

Although "[t]he term 'disposition' is not defined in the U.C.C.," courts have concluded that it "means an actual transfer of an interest in the collateral by sale, lease, or contract." Id. (citing General Elec. Capital Corp. v. Vashi, 480 N.W.2d 880, 881 (Iowa 1992)). The only transfer described in the summary judgment record relates exclusively to the deed of trust and its description of the property – real and personal – securing the Note. Therefore, if there was a disposition of the personal property collateral not described in the deed of trust, then a genuine dispute of material fact arises: whether the disposition was commercially reasonable. If it was not, then a third factual issue arises: what amount of proceeds would have been realized had the trustee disposed of the collateral in a commercially reasonable manner? Resolution of these disputed facts dictates Southern's ultimate right to a deficiency judgment against any of the Defendants.

## IV. RECOMMENDATION

In sum, Southern has failed to meet its Rule 56(a) burden. There are genuine issues of material fact, which preclude summary judgment. However, these disputes relate solely to the

issue of the disposition of collateral securing the Note. Therefore, the undersigned RECOMMENDS that the Court ADOPT the undisputed facts set forth above in Part I of this Report, DENY Southern's Motions for Summary Judgment (ECF Nos. 68, 70) and DIRECT an evidentiary hearing on the remaining factual issues listed above in Part II.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of filing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.

Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433
(4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th
Cir. 1984).


                                    _____/s/_____
                                    Douglas E. Miller
                                    United States Magistrate Judge
                        _____

                        DOUGLAS E. MILLER
                        UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 9, 2015